UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RAMON A. THOMPSON, | ) 1:08CV0027 |
| | ) |
| Petitioner | ) JUDGE DONALD NUGENT |
| | ) (Magistrate Judge Kenneth S. McHargh) |
| v. | ) |
| | ) |
| RICH GANSHEIMER, | ) |
| Warden, | ) |
| | ) |
| Respondent | ) REPORT AND RECOMMENDED |
| | ) <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Ramon A. Thompson ("Thompson") filed a petition for a writ of habeas corpus[1], through counsel, arising out of his August 2004 convictions in the Cuyahoga County (Ohio) Court of Common Pleas for felonious assault, with firearm specifications, and having a weapon while under disability.  In his petition, Thompson raises four grounds for relief:

> 1.  The trial court violated Mr. Thompson's rights under the due process clause when it permitted the prosecution to amend the indictment on the day of trial to include an additional or alternative victim without resubmitting the case to the grand jury.

> 2.  Mr. Thompson's rights under the Sixth Amendment and due process clause were violated where the indictment and jury instruction with respect to felonious assault allowed the jury to convict Mr. Thompson without reaching a unanimous verdict.

---

[1] Thompson has a separate petition for writ of habeas corpus, on separate grounds,  pending before this court on his July 2004 conviction in the CR-405065 case, which is not addressed in this Report and Recommendation.  See generally Thompson v. Gansheimer, No. 1:08CV0151 (N.D. Ohio).

3.  The trial court violated Mr. Thompson's rights under the Sixth
Amendment and due process clause by failing to instruct the jury on
the inferior offense of aggravated assault where there was sufficient
evidence of provocation to warrant the instruction.

4.  Mr. Thompson's right to a fair trial under the Sixth Amendment
and his rights under the due process clause were violated because the
jury was repeatedly and erroneously exposed to evidence of his prior
criminal record and unsubstantiated suggestions that he was engaged
in ongoing criminal activity.

(Doc. 1, at § 12.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

[Thompson] was indicted in 2002 for felonious assault with firearm
specifications, having a weapon under disability and intimidation. He
was not arrested until 2003.  In July 2004, [Thompson] was tried and
convicted by a jury of felonious assault with firearm specifications and
was convicted by the trial court of having a weapon under disability.
The trial court sentenced [Thompson] to an aggregate ten-year prison
term, three years on the firearm specifications, and seven years on the
felonious assault offense.

According to the record, in November 2001, police were alerted that
shots had been fired at 3602 East 114th Street in Cleveland.  The
police arrived within five minutes of receiving the call and proceeded to
the second floor apartment, where Angell Carpenter and her three
preschool-aged children were inside.  Prior to entering the house, the
police had to maneuver past a refrigerator which Carpenter had used
to block the doorway.  Carpenter, who had been visiting with her
neighbor Marquise Prevost at the time, explained that [Thompson] had
just accosted her and Prevost during an argument.

Carpenter testified that [Thompson] became angry and chased Prevost
out of the apartment. [Thompson], alias Jeffrey Tucker, alias Reno,
who had lived with Prevost for a few months, was angry because
Prevost told him that the landlord said he had to move out of the

2

apartment or she would be evicted.  He also became very angry about
$40 he claimed he was owed.  Carpenter also reported that [Thompson]
was armed with a small silver or black automatic handgun at the time.
She further testified that [Thompson] hit her in the back of the head
with the gun, and the gun went off.

Latonya Player-Reid testified that she saw her daughter, Marquise,
the night of the shooting.  She further testified that she called
[Thompson]'s phone after the shooting and argued with him. Officer
Frank Woyma testified that Angell Carpenter was at the house with
her three children the night of the shooting, and her face was red and
she had a "knot" behind her ear.  Officer Woyma further stated that
there was a bullet hole in the wall and a shell casing in the house.  He
also stated that the gutter outside of the house was bent where Prevost
said she jumped from the porch.

(Doc. 9, RX 16, at 2-3; State v. Thompson, No. 85843, 2006 WL 1705136, at *1 (Ohio

Ct. App. June 22, 2006).)

Thompson did not file a timely direct appeal within the thirty days allowed

by state law, but on Feb. 18, 2005, the court of appeals granted his motion for leave

to file a delayed appeal.  However, on June 6, 2005, that appeal was dismissed for

failure to file a brief in support.  (See generally doc. 9, RX 10, appellate docket.)

On Aug. 19, 2005, Thompson filed an application to reopen his appeal

pursuant to Ohio App.R. 26(B).  (Doc. 9, RX 11.)  The court of appeals, sua sponte,

converted his application into a motion for reinstatement, which was granted.

Counsel was appointed.  (See generally doc. 9, RX 10, appellate docket.)

Through counsel, Thompson then presented five assignments of error:

1. Mr. Thompson was denied federal and state due process under the
Fifth and Fourteenth Amendments to the United States Constitution
and Article I, Section 10 of the Ohio Constitution when the court

permitted an amendment to the indictment without resubmission of
the cause to the grand jury.

2. The indictment and jury instruction alleging felonious assault were
deficient because they allowed the jury to convict Mr. Thompson
without reaching a unanimous verdict thereby violating his rights
under the Sixth Amendment as well as his right to due process.

3. Ramon Thompson's rights to due process and a fair trial were
violated because the jury was repeatedly exposed to irrelevant
evidence of his prior criminal record and unsubstantiated suggestions
of ongoing criminal activity.

4. The trial court erred in violation of the Due Process Clause of the
United States Constitution by failing to give the jury an instruction on
aggravated assault when the facts indicated sufficient evidence of
serious provocation to convict appellant of the inferior degree offense of
aggravated assault.

5. Trial counsel was ineffective for failing to object to ambiguous jury
instructions referring to an additional or alternative felonious assault
victim and for failing to request that the court give a specific
unanimity instruction with respect to the alleged felonious assault
victims.

(Doc. 9, RX 13, at vi.)

On June 22, 2006, the court of appeals affirmed the judgment of the trial

court.  (Doc. 9, RX 16; State v. Thompson, No. 85843, 2006 WL 1705136  (Ohio Ct.

App. June 22, 2006).)

On Aug. 15, 2006, Thompson filed an appeal in the Ohio Supreme Court.

(Doc. 9, RX 18.)  In his brief, Thompson set forth the following four propositions of

law:

1.  The trial court violated the defendant's Fifth and Fourteenth
Amendment right  to due process as well as Article I, Section 10 of the

4

Ohio Constitution when it  permitted an amendment to the indictment
without resubmission of the cause to the grand jury.

2. The indictment and jury instruction alleging felonious assault were
deficient because they allowed the jury to convict Mr. Thompson
without reaching a unanimous verdict thereby violating his rights
under the Sixth Amendment as well as his right to due process.

3.  The trial court's failure to instruct the jury on aggravated assault
where  evidence of serious provocation supported the inferior offense
violated Ramon Thompson's rights under the Sixth Amendment and
Due Process Clause of the United States Constitution.

4.  Ramon Thompson's rights to due process and a fair trial were
violated because the jury was repeatedly exposed to irrelevant
evidence of his prior criminal record and unsubstantiated suggestions
of ongoing criminal activity.

(Doc. 9, RX 19.)  On Nov. 1, 2006, the state high court denied leave to appeal, and

dismissed the appeal as not involving any substantial constitutional question.  (Doc.

9, RX 20; State v. Thompson, 111 Ohio St.3d 1472, 855 N.E.2d 1260 (2006).)

Thompson filed a pro se petition for a writ of habeas corpus in state court on

Dec. 14, 2006.  The state petition was denied through the granting of the warden's

motion for summary judgment.  (Doc. 9, RX 22; State ex rel. Thompson v.

Gansheimer, No. 2006-A-0086, 2007 WL 1965466, at *1 (Ohio Ct. App. July 6, 2007)

(per curiam).)  The court rejected Thompson's argument that his detention in this

case was invalid because the trial court lacked jurisdiction.  The court noted that:

. . . the second Cuyahoga County case [this case, No. CR-418761] was a
separate criminal proceeding based on a distinct indictment, it follows
that any alleged error in the first Cuyahoga County case [CR-405065]
could not have affected the authority of the trial court in the second
case to proceed.  Stated differently, even if we accept the assertion that
the failure to follow the five-day limit had the effect of invalidating the

5

seventeen-month sentence under the first case, the ten-year sentence
under the second case would still remain valid and would justify
petitioner's continuing incarceration in the state prison.

(Doc. 9, RX 22; Thompson, 2007 WL 1965466, at *3.)

Thompson appealed that judgment to the state high court (doc. 9, RX 24),

which affirmed the judgment below on Dec. 19, 2007.  (Doc. 9, RX 26; Thompson v.

Gansheimer, 116 Ohio St.3d 349, 879 N.E.2d 199 (2007).)

On Jan. 4, 2008, Thompson filed this petition for a writ of habeas corpus.

(Doc. 1.)


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable

facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

## III.  IMPROPER INDICTMENT

The first ground of the petition is:  "The trial court violated Mr. Thompson's rights under the due process clause when it permitted the prosecution to amend the indictment on the day of trial to include an additional or alternative victim without resubmitting the case to the grand jury."  (Doc. 1, at § 12.)  The state court of appeals did not address Thompson's federal due process claim, but found his claim without merit because, under Ohio law, it is not improper for an indictment to be amended to include a change to the victim's identity, because the victim is not an

element of the offense and thus any change in the victim's identity is not a change to the crime charged.  (Doc. 9, RX 16, at 5-6; Thompson, 2006 WL 1705136, at *3 (citing Dye v. Sacks, 173 Ohio St. 422, 425, 183 N.E.2d 380, 383 (1962).)

The respondent argues that this claim is without merit because there is no federal constitutional right to an indictment.  (Doc. 9, at 16.)

The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The decision would be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price, 538 U.S. at 640.

The U.S. Supreme Court has stated that, generally, "the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings." Knewel v. Egan, 268 U.S. 442, 446 (1925).  The sole Constitutional issue is whether the indictment provides the defendant with sufficient information of the charged offense, to enable him to defend himself against the accusations. Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002), cert. denied, 540 U.S. 853 (2003); Blake v. Morford, 563 F.2d 248, 250 (6th Cir. 1977), cert. denied, 434 U.S. 1038 (1978).  See also Cole v. Arkansas, 333 U.S. 196, 201 (1948); Hartman v. Lee, 283 F.3d 190, 195 n.5 (4th Cir. 2002), cert. denied, 537 U.S. 1114 (2003).

"Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding." Roe, 316 F.3d at 570 (quoting Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986)).  Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of Ohio law is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Thompson argues that "the prosecution give him no way to prepare his defense in this case."  (Doc. 13, at 12.)  The indictment appears to have properly notified Thompson of the felonious assault charge against him.  See doc. 9, RX 2 (indictment).  Although the indictment itself was not amended to add "and/or Angell Carpenter" as a victim until July 6, 2004 (the first day of trial), the prosecutor had notified the defense of the intent to do so several months earlier, thus there was no actual prejudice to the defendant.   See doc. 9, RX 5 (trial tr.), at 4-7.

The court does not find that the state court decision regarding the indictment was contrary to clearly established federal law.  The petition should not be granted on the basis of the first ground.

## IV.  FAULTY JURY INSTRUCTIONS

The second ground of the petition is:  "Mr. Thompson's rights under the Sixth Amendment and due process clause were violated where the indictment and jury instruction with respect to felonious assault allowed the jury to convict Mr.

9

Thompson without reaching a unanimous verdict."  The third ground of the petition is:  "The trial court violated Mr. Thompson's rights under the Sixth Amendment and due process clause by failing to instruct the jury on the inferior offense of aggravated assault where there was sufficient evidence of provocation to warrant the instruction."  (Doc. 1, at § 12.)  The state court of appeals addressed these two claims[2] together.  (Doc. 9, RX 16, at 7; Thompson, 2006 WL 1705136, at *3.)

<u>A.  Unanimous Verdict</u>

The state court found that the allegedly improper instruction concerning unanimity had not been raised at trial, and the claim was thus waived.  (Doc. 9, RX 16, at 7; Thompson, 2006 WL 1705136, at *3.)  The respondent argues that this claim has been procedurally defaulted.  (Doc. 9, at 21.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in

_____

[2] The second and third grounds of the habeas petition correspond to the second and fourth assignments of error in Thompson's brief on appeal.

10

the state has been given a full and fair opportunity to rule on the petitioner's claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)). A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules. Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief. Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977). Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750); Davie v. Mitchell, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), aff'd, 547 F.3d 297 (6th Cir. 2008).

The court considers four factors to determine whether a claim has been procedurally defaulted: (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether

the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

Ohio's contemporaneous objection rule is an adequate and independent state ground on which the state can rely to foreclose habeas review.  See generally Wainwright, 433 U.S. at 86-88 (contemporaneous objection rule adequate & independent state ground to foreclose habeas review); Gulertekin v. Tinnelman-Cooper, 340 F.3d 415, 424 (6th Cir. 2003) (Ohio's contemporaneous objection rule); Loza v. Mitchell, No. C-1-98-287, 2002 WL 1580520, at *28-*30 (S.D. Ohio June 11, 2002) (citing Scott v. Mitchell, 209 F.3d 854, 867-871 (6th Cir.), cert. denied, 531 U.S. 1021 (2000)).  Thus, the first three Maupin factors are satisfied.

Thompson argues that ineffective assistance of counsel, namely the failure to properly object to the jury instructions, is cause to excuse the procedural default. (Doc. 9, at 13-14.)  As to the issue of cause, "[a] claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Deitz v. Money, 391 F.3d 804, 809 (6th Cir. 2004) (citing Edwards v. Carpenter, 529 U.S. 446, 452 (2000)).

On direct appeal, Thompson asserted that his trial counsel was ineffective for "failing to request an instruction that would clarify the allegations against Mr. Thompson and further his client's interest in an unanimous verdict." (Doc. 9, RX 13, at 29-30.) However, "[a]ttorney error does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient." Deitz, 391 F.3d at 809 (citing Strickland v. Washington, 466 U.S. 668 (1984)). Under Strickland, there must be a showing of both "that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant." Id. (citing Strickland, 466 U.S. at 688, 694).

> The state court of appeals applied Strickland, and ruled:
>
> Appellant in the case at bar failed to provide any evidence demonstrating that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Indeed, the record amply supports the propriety of counsel's actions. A complete review of the record in this case yields no indication of ineffective assistance of counsel. Appellant failed to meet the elements under Strickland and failed to show that the outcome in this matter would have been different.
>
> We find the trial attorney's conduct to be proper and do not find any violation of any essential duties to the client in this matter.

(Doc. 9, RX 16, at 12; Thompson, 2006 WL 1705136, at *5-*6.)

Although the state court's opinion does not elaborate on the reasons behind its findings, the court does indicate that it performed "[a] complete review of the record." (Doc. 9, RX 16, at 12; Thompson, 2006 WL 1705136, at *5-*6.) In their

13

appellate brief, the state had stressed the "prejudice" aspect of Strickland, arguing that "the testimony of two eyewitnesses whose testimony was corroborated by physical evidence" was apparently credited by the jury, and was strong enough to find that the outcome would not have been different.  (Doc. 9, RX 14, at 9-10.)  The state court's reference to the prejudice prong indicates that the court found the state's arguments more convincing than the appellant's.

This court cannot find that the state court decision is an objectively unreasonable application of Strickland.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.  Thus, because Thompson's trial counsel was not constitutionally deficient, counsel's performance does not serve as cause to excuse the procedural default.  Because Thompson has not shown cause, it is unnecessary to consider the issue of prejudice.  Murray v. Carrier, 477 U.S. 478, 494 (1986).

### 1.  Plain error review

The state court found no plain error to overcome waiver, because the trial court gave an adequate general unanimity instruction.  The court noted:  "A general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for conviction."  (Doc. 9, RX 16, at 7; Thompson, 2006 WL 1705136, at *3.)  The respondent points to the following record evidence in support:  "[THE COURT:] Because this is a criminal case, the law requires that all 12 of you be in agreement before you can consider that you have reached a verdict."  (Doc. 9, RX 8, trial tr., at

14

565.) However, controlling precedent in the Sixth Circuit is "that plain error review does not constitute a waiver of state procedural default rules." Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001); see also Keith v. Mitchell, 455 F.3d 662, 673-674 (6th Cir. 2006), cert. denied, 549 U.S. 1308 (2007); Gulertekin, 340 F.3d at 423-424.

The petition should not be granted on the basis of the second ground because it was procedurally defaulted in the state court.

### B. Instruction on Assault

As to the instruction related to assault, the court noted that the distinction between felonious assault and aggravated assault was that the inferior offense of aggravated assault "requires the additional mitigating element of provocation." (Doc. 9, RX 16, at 8; Thompson, 2006 WL 1705136, at *4.) The court of appeals found that "[t]he evidence presented at trial demonstrates that appellant was not sufficiently provoked in such a manner as to justify appellant's use of deadly force," thus the trial court's actions were proper. (Doc. 9, RX 16, at 9; Thompson, 2006 WL 1705136, at *4.)

The respondent asserts that Thompson is unable to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. (Doc. 9, at 26.)

More importantly, as discussed above, a habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman, 501 U.S. at 731; Buell, 274 F.3d at 349.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust, 17 F.3d at 160.

This court cannot consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Picard v. Connor, 404 U.S. 270, 274-275 (1971); Jacobs, 265 F.3d at 415.  A district court has discretion to raise sua sponte the failure to exhaust.  Szuchon v. Lehman, 273 F.3d 299, 321 n.13 (3d Cir. 2001) (substantial concerns of comity & federalism implicated by exhaustion doctrine) (citing cases); Acosta v. Artuz, 221 F.3d 117, 121 (2d Cir. 2000) (citing cases); Hardiman v. Reynolds, 971 F.2d 500, 502-503 (10th Cir. 1992); Allen v. Perini, 424 F.2d 134, 139 (6th Cir. 1970).

The Sixth Circuit has stated:

> A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his claim to the state courts.  This court has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented":  (1) reliance upon federal cases employing constitutional analysis;  (2) reliance upon state cases employing federal constitutional analysis;  (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;  or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (citing Franklin v. Rose, 811 F.2d 322, 325-326 (6th Cir. 1987)).  See also

16

Hicks v. Straub, 377 F.3d 538, 552-554 (6th Cir. 2004), cert. denied, 544 U.S. 928 (2005). To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law. Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).

Although the caption referred to a due process violation (doc. 9, RX 13, at 25), Thompson did not argue this claim as a federal constitutional issue. He relied solely on state law arguments in his state appeal. The petitioner's state appeal did not rely on federal constitutional analysis, nor did his claims implicate a constitutional right. See doc. 9, RX 13, at 25-29. The claim was not fairly presented to the state courts.

As to the merits of the claim, the Supreme Court has held that due process requires a lesser included offense instruction in a capital case "only when the evidence warrants such an instruction." Hopper v. Evans, 456 U.S. 605, 611 (1982). The majority view, shared by the Sixth Circuit, is that the failure to instruct on lesser included offenses in noncapital cases, such as this, is not cognizable in federal habeas cases. Bagby v. Sowders, 894 F.2d 792, 795-797 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990) (citing cases). See also Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002), cert. denied, 537 U.S. 1192 (2003) (citing Bagby); Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir. 2001), cert. denied, 535 U.S. 975 (2002) (Constitution does not require lesser included offense instruction in non-capital cases, citing Bagby). Also, the allegation that an instruction may be incorrect under state law is

17

not a basis for habeas relief.  Todd v. Stegal, No. 00-2203, 2002 WL 554500 (6th Cir. Apr. 12, 2002) (per curiam), cert. denied, 537 U.S. 981 (2002) (citing Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)).

The petition should not be granted on the basis of the third ground because it was not fairly presented to the state courts.

## V.  EVIDENTIARY RULINGS

The fourth ground of the petition is that:

> Mr. Thompson's right to a fair trial under the Sixth Amendment and his rights under the due process clause were violated because the jury was repeatedly and erroneously exposed to evidence of his prior criminal record and unsubstantiated suggestions that he was engaged in ongoing criminal activity.

(Doc. 1, at § 12.)

In his brief on appeal, Thompson pointed to three instances of prejudicial testimony.  (Doc. 9, RX 13, at 17-22.)  First, during Prevost's testimony, Thompson claims that the prosecutor "persistently and repeatedly" questioned why Prevost wanted "Jeffrey Tucker"[3] to leave the apartment even after she had already supplied an answer.  Id. at 18.

Q.  Was there a threat for you to be evicted?

A.  Yes, I was told that if I did not ask him to leave – because I brought him in without notifying her – she was going to evict me and I had no place to go.

---

[3] "Jeffrey Tucker" was an alias used by Thompson.  (Doc. 9, RX 13, at 4.)

18

Q.  Okay.  Well, was there anything particular about the defendant that was causing problems with the landlord?

A.  Yes.  The landlord – one day she was over and she noticed – how could I put it – she noticed things that was inappropriate at the residence.  And she did not want that in her home.  Then he brought pets in and we were not allowed to have pets.

Q.  What kind of pet did he have?

A.  A dog.  I think it was a pit bull.

Q.  How big was the dog?

A.  It was just a little puppy, but she did not want any animals or illegal things going on in her home.

Q.  Well, now, on this day in question you're preparing dinner was this dog there at the apartment?

A.  Yes, the dog was still there.  He was in the back yard because the landlord told him to take the dog out the house.  First the dog was in the house and he put the dog in the attic.  The landlord popped up one day when we weren't there, heard the dog in the attic, left me a note and came back and said if I do not tell Reno[4] he has to move and remove the dog, I will be evicted in less than two weeks.

Q.  Okay.  So at this time the dog wasn't in the apartment the dog was in the back yard?

A.  Yeah, he had put him in the back yard.

Q.  Okay.  Now you said there was also – your landlord say inappropriate things.  What was the inappropriate things?

A.  She told me she had suspicion of drug trafficking.

---

[4] "Reno" was another name used by Thompson.  (Doc. 9, RX 13, at 5.)

19

(Doc. 9, RX 13, at 18-19, citing Trial tr., at 265-267.)  Thompson maintained that, after the trial court sustained an objection, the prosecutor returned to the subject on redirect.  Id. at 19.

The state court of appeals noted that "the evidence regarding the reasons appellant was told to leave the house was properly presented to rebut appellant's theory offered to the jury, i.e., that the victim was arguing over bills with appellant and that she and Carpenter wanted appellant to leave so Carpenter could move in." (Doc. 9, RX 16, at 10; Thompson, 2006 WL 1705136, at *5.)

A second instance involved the following, according to Thompson's appellate brief.  When Prevost's mother, Latonya Reid testified, the prosecutor asked her to recount a conversation she had with Thompson on the night in question, during which Thompson allegedly told Reid, "I ain't going back to jail.  I done been to jail before."  (Doc. 9, RX 13, at 20, citing Trial tr., at 415.)  The court of appeals noted the trial court's limiting instruction:  "the jury was immediately instructed to disregard appellant's statement that he did not want to go back to jail."  (Doc. 9, RX 16, at 10; Thompson, 2006 WL 1705136, at *5.)

The final instance concerned a police officer's testimony regarding his resort to the Cleveland Police Department's records management system, which is a database of police reports.  (Doc. 9, RX 13, at 20-22, citing Trial tr., at 450-452.) The officer testified that he utilized the system to learn that Jeffrey Tucker was an

20

alias for Thompson.  The trial court overruled the defense objection to this testimony.

The state court of appeals overruled Thompson's assignment of error, and found "the evidence in this case was properly submitted to the jury as relevant probative evidence."  (Doc. 9, RX 16, at 10; Thompson, 2006 WL 1705136, at *4-*5.)

The respondent argues that Thompson is not entitled to habeas relief on this ground because it is an issue of state law, and relief would be appropriate "only where a violation of a state's evidentiary rule resulted in the denial of fundamental fairness, and therefore, a violation of due process."  (Doc. 9, at 31.)

Thompson responds that "this claim is not directed at a mere violation of state evidentiary rules."  (Doc. 13, at 20.)  He asserts that there is a Sixth Amendment violation when the factfinder was prejudiced against the defendant through evidence about "other bad acts which the defendant has allegedly committed; acts for which the defendant is not on trial."  Id.  Thompson points out the evidence about his prior bad acts or bad character is generally inadmissible under Ohio Evid.R. 404(B), as well as the Federal Rules of Evidence.  Id. at 20-21.

Thompson also notes that he chose not to testify "in part to prevent prosecutors from questioning him about his criminal history."  Id. at 22.  This tactical decision was intended to focus the jury on the issues in the case, rather than irrelevant and prejudicial information about prior convictions.  Id.  The

prosecution thwarted this by "repeatedly and improperly eliciting from its witnesses information pertaining to his criminal history." Id.

The "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not within the purview of a federal habeas court. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988). See also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.), cert. denied, 540 U.S. 930 (2003). This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings. Small v. Brigano, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

Even assuming, for the sake of argument, that the evidentiary ruling was erroneous, Thompson would not be entitled to habeas relief on this claim. Alleged state court errors of evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." Broom v. Mitchell, 441 F.3d 392, 406 (6th Cir. 2006), cert. denied, 549 U.S. 1255 (2007). See also Bugh, 329 F.3d at 512. Courts have defined the category of errors that are fundamentally unfair very narrowly. Bugh, 329 F.3d at 512. Thompson has not made a convincing argument that his case qualifies.

Moreover, in Bugh, the Sixth Circuit found that there was no clearly established Supreme Court precedent which holds that a state violates due process by admitting other bad acts evidence.  Bugh, 329 F.3d at 512.  "While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence[5], it has not explicitly addressed the issue in constitutional terms." Id. at 513 (citing Old Chief v. United States, 519 U.S. 172 (1997); Huddleston v. United States, 485 U.S. 681 (1988)).  The court upheld the district court's denial of habeas relief, finding that there was no Supreme Court precedent that the trial court's ruling could be "contrary to," under the AEDPA.  Id.  Thompson has not provided any such precedent.

Thompson has failed to demonstrate that the state court rulings on the evidentiary issue are contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.


## VI.  SUMMARY

The petition for a writ of habeas corpus should be denied.  Thompson has failed to demonstrate that the state court rulings on the first and fourth grounds are contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.  The second

---

[5] Ohio Rule of Evidence 404(B) is substantially similar to the federal rule. Broom, 441 F.3d at 405 n.20.

ground was procedurally defaulted, and the third ground was not fairly presented to the state courts.

## RECOMMENDATION

It is recommended that the petition be denied.


Dated:  May 1, 2009                              /s/ Kenneth S. McHargh
                                                 Kenneth S. McHargh
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).